In the Matter of AARON ZANGER, Appellant.
THE ASSOCIATION OF THE BAR OF THE CITY OF NEW
YORK, Respondent.

(Argued January 4, 1935; decided January 15, 1935.)

*Charles H. Tuttle, Edwin L. Garvin* and *Thomas E. Kerwin* for appellant. Regardless of the existence or non-existence of another person of the same name used by the client, and regardless of whether the appellant knew of his existence, the appellant was not guilty of any unprofessional conduct, certainly not of such moral obliquity as is an essential condition of disbarment. (*Smith* v. *United States Casualty Co.*, 197 N. Y. 420; *Bradley* v. *Fisher*, 13 Wall. 355; *Matter of Reifschneider*, 60 App. Div. 478.) There must be intentional misconduct before there can be any disbarment; and, in the present case, the undisputed proof, the stipulation of facts, and the explicit findings of the referee after a full personal examination of the appellant, successfully demonstrate the absence of any intentional misconduct. (*Matter of Palmieri*, 221 N. Y. 611.)

*Carleton S. Cooke* and *Einar Chrystie* for respondent. The appellant's participation in the proven impersonation of another person by the witness was a fraud upon the court amounting to professional misconduct. (*Matter of Goodman*, 158 App. Div. 465; 220 N. Y. 570; *Matter of Rouss*, 221 N. Y. 81.) The jurisdiction of the Court of Appeals is confined to the question whether there is evidence to support the finding of guilt. (*Matter of Goodman*, 199 N. Y. 143; *Matter of Axtell*, 257 N. Y. 210; *Matter of Hawes*, 217 N. Y. 602; *Matter of Flannery*, 212 N. Y. 610.)

LEHMAN, J. The appellant, an attorney, has been charged with professional misconduct: " (a) In representing to the court that the person called by him as a witness as above stated was Samuel Levando, the President of S. Levando, Inc., when he knew that such representation was false and that the person so called was in fact Frank J. Feldman.

" (b) In preparing and submitting to the court an affidavit in opposition to the motion made to correct

that endorsement on a precept purporting to be signed and verified by Samuel Levando, the president of S. Levando & Co., when in fact as respondent well knew said affidavit had been signed by Feldman, and attaching to said affidavit an affidavit verified by the respondent containing the statement above referred to."

The Appellate Division has found him guilty and has ordered his disbarment.

At the hearing, conducted before the referee appointed by the Appellate Division, there was no dispute as to the facts upon which the charges are based. Dispute, if any, is confined to the inferences which may properly be drawn from these facts as to the appellant's motives and purposes. At the outset of the hearing a stipulation was made " that the following is a statement of the facts, proceedings and papers herein and that the same may be considered by the referee and the court with the same force and effect as if established by the testimony of witnesses and the introduction of documentary evidence." The attorney took the stand as a witness in his own behalf and testified briefly as to his motives and state of mind in performing the acts set forth in the agreed statement of facts. Then he was subjected to a minute examination by the referee and to cross-examination by the petitioner. With the exception of evidence which establishes, without dispute, the previous good reputation of the appellant, no other testimony was taken.

It thus appears, without dispute, that in May, 1925, the Yona-Varah Realty Corporation leased to S. Levando, Inc., a store and basement in premises 175 West Seventy-third street, New York city. In May, 1929, the landlord instituted dispossess proceedings against the tenant claiming two months' rent and demanding a money judgment for the same with interest. An answer was interposed on behalf of the tenant by one Frank J. Feldman.

At the trial of this dispossess proceeding the appellant appeared as attorney for the tenant. The disputed

question there was whether the rent was unpaid for one or for two months. He called, as the only witness for the tenant, Frank J. Feldman. Feldman gave his name as S. Levando and testified that he was the president of S. Levando, Inc., the tenant who was sued, and that he had paid all the rent due except for one month. At the close of the trial the court, believing this witness, held that there was only one month's rent due.

A few days thereafter a motion was made by the landlord to correct the indorsement on a petition and precept in a previous dispossess proceeding between the same parties. The appellant, as attorney, prepared an affidavit to be submitted by the tenant in opposition to the motion. That affidavit begins with the recital: " Samuel Levando, being duly sworn, deposes and says: I am the President of the tenant in this proceeding." Feldman signed this affidavit as " S. Levando " and swore to it. The appellant himself made an affidavit in the same proceeding in which he referred to the " statement made in the affidavit of the President of the tenant, Mr. Levando." Upon learning that Feldman had falsely represented that he was S. Levando, the president of the corporation, though in fact he was at no time such president, the landlord's attorney moved to set aside the final order in the dispossess proceeding and for a new trial. The motion was granted and upon the new trial the court decided in favor of the landlord upon its claim that two months' rent was unpaid. The ground of the decision was that Feldman's testimony should be rejected because, upon the previous trial, he had testified that he was S. Levando.

An attorney owes to the court absolute good faith. Any intentional deceit practiced by an attorney upon the court is evidence of a moral obtuseness which may unfit him for his high calling. Efficient administration of justice requires that an attorney shall be held to high moral standards of conduct. Disregard of such standards should not be condoned upon the plea that more serious

offenses by others are common. The attorney here makes no such plea. He says that there has been no intentional deceit on his part, no act which is morally reprehensible. The referee appointed to hear and report upon the charges was, of course, selected by the Appellate Division because his own reputation as a member of the bar establishes that he understands and lives up to the traditional high standards of his profession. After hearing and examining the appellant, the referee reported that " the respondent was guilty at most of a mistake of the head rather than a conscious or malicious mistake of the heart," and that the charges should be dismissed. The Appellate Division has decided otherwise. The question before us is whether from the agreed facts an inference may be drawn that the appellant was guilty of such professional misconduct as would constitute a cause for disbarment. (*Matter of Flannery*, 212 N. Y. 610; Cf. *Matter of Schwarz*, 231 N. Y. 642.)

That question necessarily requires consideration of the knowledge of the appellant that Feldman was in fact not S. Levando, the president of S. Levando, Inc., and the reason why the appellant failed to disclose whatever knowledge he had to the court. The facts established by the stipulation or admissions of the attorney and which are relevant upon these points, are as follows: Feldman had been a client of the appellant in certain personal matters in the year 1924 and the appellant knew that his name then was Frank J. Feldman. The relation of attorney and client between Feldman and appellant had ceased at least one year before any of the proceedings here in question in which appellant had appeared. The appellant " knew that Feldman had conducted his business as and used the name of S. Levando." In April, 1928, S. Levando, Inc., was sued by Pelz-Greenstein, Inc., for the purchase price of goods sold and delivered. The summons and complaint were served upon Feldman though the affidavit of service states that the service had

been made upon " S. Levando, president of the cor-
poration." Feldman filed a verified answer written by
himself on a form containing a general denial and signed
by him " S. Levando, Inc., by S. Levando, President."
Throughout this action Feldman appeared as S. Levando
and so executed a stipulation of settlement and an affidavit
in which he describes himself as S. Levando, president of
S. Levando, Inc. He negotiated the settlement himself
under this name with the agents and attorneys for Pelz-
Greenstein, Inc., and was known to them as S. Levando.
With the proceeding until that point the appellant had
no connection, but after judgment in the action was
entered, Feldman asked that the appellant represent him.
On a motion made thereafter in the action by the appellant
as attorney, he prepared and submitted an affidavit sworn
by Feldman as S. Levando, president of Levando, Inc.,
and " Pelz-Greenstein's attorneys referred to the pro-
ceedings and dealings had with Mr. Levando, meaning
thereby Feldman, on numerous occasions." The appel-
lant thus obtained knowledge that Feldman did use the
name of S. Levando in business dealings and claimed to
be president of S. Levando, Inc. When Feldman testified
upon the dispossess proceedings the appellant's " knowl-
edge of the use of the name S. Levando by Feldman and
of Feldman's connection with S. Levando, Inc., was based
upon Feldman's statements to him and the proceedings
at the trial on June 21, 1929, and in the Pelz-Greenstein
case." The appellant did not know the real Samuel
Levando and had never met him until the oral hearing on
the motion to vacate the order made after the trial in the
dispossess proceedings at which Feldman had testified
under the assumed name of S. Levando. At the time of
that trial the appellant did not know whether " Feldman
was or was not an officer or president of S. Levando,
Inc." In fact Feldman was at no time president of that
corporation although he was connected with it in some
manner.

So far we have referred only to the facts which were stipulated and except for some condensation and omission of detail we have stated the facts in the language of the stipulation. These facts are amplified and explained by the minutes of the two trials in the dispossess proceedings, the minutes of preliminary hearings upon these charges before the Association of the Bar, and by certain affidavits in connection with these various proceedings. All these papers are incorporated by reference in the stipulation and submitted to the referee. Without them the stipulated facts cannot be fully understood. They do not contradict or alter the agreed facts. In effect they constitute the background against which these facts must be viewed.

The complete picture then shows that the appellant, in a proceeding against S. Levando, Inc., called as witness for the defendant a man whom he had previously known as Frank J. Feldman and permitted the witness to testify that he was Samuel Levando and the president of S. Levando, Inc., and thereafter the appellant submitted to the court affidavits prepared by himself in which, again, Feldman described himself as Samuel Levando, president of S. Levando, Inc. The appellant knew at that time that Feldman was conducting a small business under the name of S. Levando, Inc. He had been informed that Feldman had permission from Samuel Levando to conduct the business under that name. He had also been informed that in connection with that business Feldman was known as Levando. The dispute which was the subject-matter of the pending litigation concerned dealings by the land-lord with Feldman personally and in those dealings the agents of the landlord had known Feldman under the name of Levando. Although the appellant knew that a man named Samuel Levando actually existed, he had never met him and had no reason to believe that Levando had any personal knowledge of or connection with the disputed transaction. In fact Levando had no such knowledge or connection. Doubtless the appellant should

properly have insisted that the witness state that his name was Frank J. Feldman and that he was conducting his business in the corporate name of S. Levando, Inc., and that in the disputed transactions, as well as in his other dealings, he was known as Mr. Levando. If a disclosure of the fact that Feldman assumed the name of Levando only in his business transactions could conceivably have injured his case or in any way affect the decision, then it would clearly have been the duty of the appellant as an officer of the court to give such information. If concealment of that fact could benefit any person or injure any person or deceive any person entitled to know all the facts, then perhaps in this case, intentional failure to make full disclosure might constitute professional misconduct calling for disciplinary action by the Appellate Division.

Since, in this case, the witness Feldman was, in fact, the man who conducted all the disputed transactions with the landlord's agents and was the only person who could have testified at the trial upon the litigated issues of fact, his assumption of the name of another person could have no bearing upon the result unless possibly, the trier of the fact might reasonably give greater credence to the testimony of a witness bearing the name of Samuel Levando than to the testimony of a witness bearing the name of Frank J. Feldman.

The name of a person like the name of a thing serves merely to identify him. For honest purposes a person may, if he choose, assume a new name. (*Smith* v. *United States Casualty Co.*, 197 N. Y. 420.) Not infrequently a person is known by one name in private life and by another name on the stage or public platform or in professional life. The question here is not whether Feldman might legally conduct his business under the name of Levando, but whether his attorney was guilty of serious professional misconduct in permitting him to testify under that name. A trier of the fact must weigh the credibility of the testi-

mony presented. He is entitled to be informed of the identity of the witnesses, for the weight that should reasonably be given to the testimony may depend to some extent upon the reputation and past life of the witnesses. A witness may not impersonate another person nor conceal his own identity. A name assumed for such purpose is then a masquerade or mask. Assumption of the name of another for such purpose or where it may have such effect constitutes deceit and an attorney who abets such deceit is guilty of gross professional misconduct.

Again, the evidence here does not permit any inference that Feldman was permitted to testify under the name of Samuel Levando for such purpose or that, in fact, his testimony had such effect. Both Feldman and Samuel Levando were small merchants unknown to the court. They were cousins, they had been in business together. There is no suggestion that Feldman had done anything in the past by which his testimony might have been impeached if he had testified under the name of Feldman. There could be no impersonation by him of the real Samuel Levando, president of S. Levando, Inc., when no interested person knew of the existence of such a man and, indeed, if there was wrongful purpose in the assumption of his name it must have been a purpose to conceal his existence; and whether or not such a person existed was in fact immaterial.

Thus on the agreed facts it appears that the appellant acted without wrongful motive. There was no false testimony on a material point; there was no purpose to deceive the court; there was no purpose to injure the opposing side. Harm resulted from his act only to his client, for because of the alleged fraud a new trial was granted and on the second trial decision was given against him because the trial judge rejected his testimony on the ground of the same alleged fraud.

An attorney should avoid even suspicion of wrong conduct. The act of the appellant was thoughtless and

he admits that it would have been better if he had insisted that Feldman testify that the name of Levando was assumed only for business purposes and convenience. Then he would have avoided suspicion of wrong. The justified suspicion of wrong created by himself has resulted in a second trial of the dispossess proceedings. Admonition should not be necessary that an attorney may not, even thoughtlessly, permit a witness to give testimony which might create even a suspicion of deceit. He should never give occasion for investigation by the Association of the Bar of his acts or his motives and the Appellate Division should not be called upon to pass on the honesty of motives. It is the duty of the members of the bar to refrain from all acts which indicate a lack of frankness or could sustain an inference of intent to deceive unless upon investigation wrongful motive is excluded. None the 'less, where, as here, the act is thoughtless, where deceit is neither its purpose or effect, an attorney is not guilty of professional misconduct which justifies disbarment.

Since in this case the evidentiary facts are undisputed and the only possible inferences from those facts point to innocence of the attorney, this court has jurisdiction to review the order of disbarment.

The order of the Appellate Division should be reversed, without costs, and the proceeding dismissed.

HUBBS, CROUCH and LOUGHRAN, JJ., concur; O'BRIEN, J., dissents and votes to affirm; CRANE, Ch. J., not voting; FINCH, J., not sitting.

Order reversed, etc.