[No. 36928. Department Two. April 9, 1964.]

DONALD D. FLEMING, *as Guardian, Respondent,* v. MARY L. SMITH, *Appellant.**

*Brethorst, Fowler, Bateman, Reed & McClure,* for appellant.

*Donald D. Fleming,* for respondent.

RUMMEL, J.†—Norton M. Smith was married in New Mexico on December 7, 1957. He signed a divorce complaint on the 30th of that month in King County, Washington, alleging that a child would be born to his wife sometime in

*Reported in 390 P. (2d) 990.

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

July, 1958, and stating his willingness to pay support for such child.

On the 12th of June, 1959, Norton M. Smith appeared in court and obtained a divorce. His wife did not appear, but was represented by counsel. A property settlement providing for the custody and support of his minor son, Michael Allan Smith, was stipulated into the record, and a divorce was granted to the plaintiff husband.

This decree provided the wife should have custody of the son, subject to reasonable rights of visitation to the father, that monthly payments were to be paid by the plaintiff for the support of the child, and

". . . that the plaintiff shall maintain in full force and effect that certain National Service Life Insurance policy upon plaintiff's life, No. R 51823-00-05, in the face amount of Ten Thousand Dollars, and that Michael Allan Smith, the minor child of the parties, shall be designated as beneficiary until his majority; that the plaintiff shall not encumber the policy in any way and shall be required to keep said policy in full force and effect during the minority of the minor child; . . ."

Norton M. Smith died on November 5, 1961, but the record is devoid of any evidence that he made the slightest effort to change the beneficiary of his National Service Life Insurance policy to name his son. The policy, issued to him prior to his marriage, named his mother as beneficiary, and upon her filing a claim, the proceeds were paid to her by the United States.

This action was brought on behalf of the minor to acquire the proceeds from Mary L. Smith, decedent's mother. A motion to consolidate the probate proceedings of the decedent with this case and for summary judgment was made on behalf of the minor son. The defendant mother moved for judgment on the pleadings. The court consolidated the two proceedings and granted summary judgment in favor of the minor child. Decedent's mother has appealed.

The appellant mother contends that the right of the assured to designate the beneficiary is absolute, and that the trial court should have granted the motion for judgment

on the pleadings and dismissed the action. Appellant asserts that Congress has clearly stated the right to designate and change the beneficiary as an absolute right of the serviceman by this language of the statute:

"The insured shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries." 38 U.S.C.A. § 717(a), p. 264.

Appellant also asserts that a further provision indicates that the courts cannot touch the proceeds in any manner, under the following section:

"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . ." 38 U.S.C.A. § 3101(a), p. 135.

A great many cases dealing with the interpretation of these sections have been before the courts of this country. In 2 A.L.R. (2d) 490 is a large collection of these cases, together with a detailed analysis of the whole subject.

In view of the existence of this rather complete treatise, it is unnecessary to do more here than to state briefly some of the established principles. Because of the substantial identity of the National Service Life Insurance Act of 1940 with the War Risk Insurance Act of World War I, the decisions dealing with change of beneficiary under the latter act are largely applicable. The rules governing private life insurance do not govern relationships under the statutorily created National Service Life Insurance.

It is well settled that, under the statutes, an insured has the absolute right to change the beneficiary, and this is so despite any agreements made in consideration of advances made to him to pay premiums, or regardless of irrevocable

covenants not to change the beneficiary, or for any other reason.

A regulation of the Veterans' Administration promulgated pursuant to statutory authority provides that, to be effective, a change of beneficiary must be made by notice in writing signed by the insured and forwarded to the Administration, must contain sufficient information to identify the insured, and when practicable such notice shall be on blanks provided by the Administration. However, it is thoroughly settled that the veteran, in exercising his right to change the beneficiary, need not comply literally with these regulations.

There is no difference of opinion in the decisions as to the first requirement to evidence a change of beneficiary, that is, that the insured must have a manifest *intent* to change the beneficiary. The split of authority seems to be over what actual act, if any, must be coupled with a showing of intent before the courts will treat the change of beneficiary as having been accomplished. The stricter view is that the insured must have done everything reasonably within his power to accomplish his purpose before the court will give effect to his intent.

The so-called "liberal rule," although allowing a change on proof of intent, still seems to require a showing of some act by which the intention is manifest. In other words, a showing of intent alone, without proof of some affirmative act performed toward accomplishing the change, is not enough. The cases supporting the more liberal view require an *overt act* of some nature to have been performed by the insured. The burden of proof is on the party asserting the change of beneficiary. These rules are well summarized on p. 510 of 2 A.L.R. (2d), *supra.* Nearly all of the pertinent cases have been decided by federal courts. Some circuits have adopted the stricter view, while others have recognized the necessity of proving only an overt act.

The United States Court of Appeals for the Ninth Circuit has adhered to the liberal view. See *Behrens v. United States,* 299 F. (2d) 662 (1962) and cases cited therein. Federal and not state law is to be applied in the interpretation

of the rights and duties of the United States on insurance policies issued by it to servicemen, and to the rights of their beneficiaries or their substituted beneficiaries. *Dyke v. Dyke,* 227 F. (2d) 461 (1955); *Lembcke v. United States,* 181 F. (2d) 703 (1950); *Woodward v. United States,* 167 F. (2d) 774 (1948). Therefore, the rule followed in the Ninth Circuit should govern in the courts of the State of Washington.

In *Mitchell v. United States,* 165 F. (2d) 758, 761, 2 A.L.R. (2d) 484 (1948), it is stated:

"These insurance cases are difficult of decision. Each must be decided in the light of its own facts. . . ."

This thought is amplified in 2 A.L.R. (2d), *supra,* where it is said, p. 500:

"It should be borne in mind that in most instances the final result reached by the court is not traceable to one single act of the insured but is based on the judicial weighing of a number of acts performed by the insured. . . ."

Was this case then one in which a summary judgment should have been granted?

"The function of the summary judgment is to avoid a useless trial; and a trial is not only not useless but absolutely necessary where there is a genuine issue as to any material fact. In ruling on a motion for summary judgment the court's function is to determine whether such a genuine issue exists, *not to resolve any existing factual issues.* . . ." (Italics ours.) 6 Moore's Federal Practice (2d ed.) § 56.15, p. 2101.

The court is of the opinion that, due to its nature, the instant case needed the full exploration of a trial. The trial court is not permitted to weigh the evidence in ruling on summary judgment. In this case, there is a moral persuasion stemming from the property settlement agreement, the fact that the insured himself applied for the divorce, and from his duty to support his minor son. On the other hand, the record indicates the insured may have been living with his mother at the time of his death, that she was incapable of supporting herself and he was contributing to her support, that there was a period of 2 years between the

decree and his death when nothing was done, that he was not in a remote place where a change of beneficiary was difficult, and that he was an educated person who probably would have understood the mechanics of effecting a change.

Moreover, there is no testimony relative to his relations with his son. A divorce was started in the same month as the insured was married, and the child was living with his mother in Texas at the time of the death. Had the insured ever seen his son, and what was the former wife's financial status?

Did the insured really *intend* to change the beneficiary? Did he enter into the settlement agreement just to obtain the divorce, and even if he intended to make the change at that time, did he abandon such intention later? The insured's mother and sister took most of the estate through the proof of oral trust agreements, and thus came into ownership of property the child would have inherited. The son was not mentioned in the will, so the decedent was adjudged to have died intestate as to him. What bearing would all these matters have had upon the court's decision after a trial?

These matters illustrate that the court should not have resolved this case by summary judgment, nor would the granting of the appellant's motion for judgment on the pleadings have been proper.

The judgment is reversed and the case remanded for trial.

Ott, C. J., Donworth, Weaver, and Hamilton, JJ., concur.